UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DARREN JENKINS,                        )
                                       )
              Plaintiff,               )
      v.                               )
                                       )    CASE NO. 1:06-cv-0707-DFH-TAB
MICHAEL J. ASTRUE,[1]                  )
Commissioner of the Social            )
Security Administration,              )
                                       )
              Defendant.               )

ENTRY ON JUDICIAL REVIEW

Plaintiff Darren W. Jenkins seeks judicial review of a decision by the Commissioner of the Social Security Administration denying his application for disability insurance benefits and supplemental security income.  After three hearings and proceedings spanning the course of more than three and a half years, an Administrative Law Judge ("ALJ") determined that although Mr. Jenkins suffered severe physical and mental impairments, he still retained the residual functional capacity to perform sedentary and light exertional work that was simple and repetitive and did not involve more than minimal contact with the general public.  On appeal, Mr. Jenkins contends that the ALJ erred in assessing his residual functional capacity.  As explained below, the ALJ failed to cite substantial

_____

[1]Michael J. Astrue took office as Commissioner of the Social Security Administration while Mr. Jenkins' case was pending before the court. Commissioner Astrue is substituted as the defendant in this action pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

evidence to support his result and substituted his own lay opinion for those of medical experts.  Specifically, the ALJ dismissed two evaluations by consulting physicians – Drs. Thomas and Bonilla – who concluded that Mr. Jenkins was disabled, and the ALJ did not support his different conclusion with different medical evidence.  Serious doubts are therefore raised about the accuracy of the ALJ's denial of benefits.  The case must be remanded for further consideration.

*Background*

Born in 1965, Mr. Jenkins worked a variety of jobs including masonry and factory labor until 2001.  R. 338.  After years of constantly bending over to lay brick, Mr. Jenkins began experiencing severe back pain.  R. 104, 597.  In December 2001, in a statement to the Food Stamp and Temporary Assistance for Needy Families programs, a physician whose written name is indecipherable found that Mr. Jenkins was totally unable to work due to his chronic neck and lower back pain until he saw a back specialist.  R. 539.

In January 2002, in a determination of disability for the Indiana Family and Social Services Administration, Dr. Ernesto Bonilla – a consulting doctor – diagnosed Mr. Jenkins with degenerative disc disease and degenerative joint disease, primarily in the lower back.  R. 134, 137-38.  Dr. Bonilla determined that these ailments began in 1996 and began affecting Mr. Jenkins' ability to work in 2000.  R. 138.  Based on MRI results, Dr. Bonilla found that Mr. Jenkins suffered moderate limitations in walking, pushing, and pulling, and significant limitations

in sitting, standing, lifting, bending, and squatting.  R. 140, 141.   These limitations were expected to continue even after treatment.  R. 140.

In addition to these physical impairments, Mr. Jenkins suffered from a variety of mental disorders.  He experienced agoraphobia; paranoia; panic attacks; and schizoaffective disorder, where symptoms of a mood disorder and psychosis are simultaneously present.  R. 340.  During his attacks, Mr. Jenkins endured a shortness of breath, felt hot and sweaty, and experienced tremors.  R. 338. Occasionally, he blacked out during these attacks and was hospitalized for depression and substance abuse several times.  *Id.*  During two of these hospitalizations in 2001, Dr. Marilyn Wagoner noted that Mr. Jenkins had a history of suicidal thoughts.  R. 195, 202.

Since the onset of his disabilities, Mr. Jenkins has lived at the Kokomo Rescue Mission or with family.  R. 167, 193, 338.  As a child, Mr. Jenkins was sexually abused by a therapist.  R. 338.  He completed at least the ninth grade before dropping out of school due to alcohol problems.  R. 167, 192, 338.  Mr. Jenkins applied for disability insurance benefits and supplemental security income in January 2002.  The ALJ assigned to his case denied Mr. Jenkins' application in September 2005.  R. 22, 29.

During the three years between the filing of his application and the ALJ's denial, Mr. Jenkins saw a number of physicians and psychological experts.  In

February 2002, K. Neville, Ph.D., completed a psychiatric review of Mr. Jenkins, finding that while he did endure anxiety related and substance addiction disorders, these impairments were not severe and warranted only mild limitations. R. 145, 155.  That same day, Dr. W. Bastnagel completed a physical residual functional capacity assessment of Mr. Jenkins, finding that he could occasionally lift twenty pounds; frequently lift ten pounds; stand, walk, and sit six hours per eight hour workday; push and pull an unlimited amount; but was limited in his capacity to reach in all directions.  R. 159-62.

In June 2002, Dr. Buonanno performed a Social Security disability evaluation finding that Mr. Jenkins had alcohol dependence in remission, panic disorder, a history of hypertension, and a Global Assessment of Functioning ("GAF") of 48.  R. 169.[2]  Then, in October 2003, staff from Howard Community Hospital Behavioral Health Services determined that Mr. Jenkins had panic disorder, mood disorder, alcohol dependence in remission, chronic back and leg pain, severe psycho-social stressors, post-traumatic stress disorder, and a GAF of 54.  R. 467, 477.[3]

In December 2003, Dr. Kathleen Thomas examined Mr. Jenkins and found that Mr. Jenkins could sit, stand, or walk at most two hours per eight hour

---

[2]A GAF score between 41 and 50 indicates a serious impairment in social or occupational functioning.  American Psychological Association, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) ("DSM-IV").

[3]A GAF score between 51 and 60 indicates moderate difficulty in social or occupational functioning.  DSM-IV, at 34.

workday; frequently lift loads up to twenty pounds; frequently carry loads up to fifty pounds; never climb or crawl; occasionally squat; and frequently bend and reach.  R. 272-74.  After a hospital admission for suicidal ideation at an unknown point in 2003, another physician whose written name is indecipherable determined that Mr. Jenkins had schizoaffective disorder, severe psycho-social stressors, and a GAF of 35.  R. 548, 551.[4]

In September 2004, Dr. Betsy Rosiek assessed Mr. Jenkins' mental ability to do work related activities.  She found his ability to make occupational adjustments poor and his ability to make performance and social adjustments predominantly poor.  R. 561-62.  On November 5, 2004, Mr. Jenkins again checked into a hospital in Kokomo for voicing suicidal thoughts.  While there, Dr. Erika Cornett diagnosed Mr. Jenkins as having alcohol dependence, panic disorder with agoraphobia, bipolar disorder, personality disorder, hypertension, and a GAF of 35.  R. 349-50.  On November 24, 2004, Dr. Donald Graber completed a second assessment of Mr. Jenkins' mental ability to do work related activities.  He found Mr. Jenkins' ability to make occupational and performance adjustments predominantly poor and his ability to make social adjustments more positive.  R. 571.

---

[4]GAF score between 31 and 40 indicates a major impairment in several areas.  DSM-IV, at 34.

Then, in January 2005, Dr. Buonanno performed another Social Security disability evaluation finding that Mr. Jenkins had alcohol dependence in remission, panic disorder with some agoraphobia in crowds, schizoaffective disorder, paranoia, three bulging discs in his back, bone spurs on his spine, panic attacks, and a GAF of 55.  R. 340-41.  The same day, Dr. Buonanno examined Mr. Jenkins' mental ability to do work related activities and found that in addition to his back pain, Mr. Jenkins had extreme difficulty in being around other people and in public and was afraid to leave home during the day for fear of having panic attacks.  R. 342-43.  At some point in 2005, Dr. Masooma Sheikh completed a third assessment of Mr. Jenkins' mental ability to do work related activities.  She found his ability to make occupational, performance, and social adjustments predominantly poor.  R. 576.

After 2001, Mr. Jenkins underwent at least fifteen different physical and mental evaluations with varying prognoses of severity.  All indicate that he suffered severe physical and mental impairments.  At the administrative hearing held on July 14, 2005, Dr. Georgiann Pitcher testified that based on Mr. Jenkins' file, Mr. Jenkins was not totally mentally disabled and that his main limitation was anxiety in being around others.  R. 590, 598.  Dr. Richard Hutson testified that Mr. Jenkins was not totally physically disabled, but the ALJ interrupted before Dr. Hutson could describe appropriate physical limitations.  R. 597.  With all of these evaluations and opinions at hand, the ALJ ruled that Mr. Jenkins retained "the residual functional capacity to perform sedentary and light

exertional work that is simple and repetitive and which does not involve more than minimal contact with the general public." R. 24.

*Statutory Framework for Determining Disability*

To be eligible for disability insurance benefits, Mr. Jenkins must establish that he suffered from a disability as defined by the Social Security Act ("Act") in 42 U.S.C. § 423(d). Under § 423(d), a disability is an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of no less than twelve months.

This standard is a stringent one. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985). The Act provides important assistance for some of the most disadvantaged members of American society. But before tax dollars are available for disability benefits, it must be clear that the claimant has an impairment severe enough to prevent him from performing virtually any kind of work. Under the statutory standard, these benefits are available as a matter of nearly last resort.

The implementing regulations for the Act provide the familiar five-step sequential evaluation of a disability claim. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are:

(1)     Is the claimant currently employed?  If so, he is not disabled.

(2)     If not, does the claimant have a severe impairment or combination of impairments?  If not, he is not disabled.

(3)     If so, does the impairment meet or equal an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. § 404?  If so, the claimant is disabled.

(4)     If not, does the claimant retain the residual functional capacity to perform his past relevant work?  If so, he is not disabled.

(5)     If not, according to the claimant's residual functional capacity, age, education, and work experience, can the claimant make an adjustment to other work?  If so, he is not disabled.  If not, he is disabled.

When applying this test, the burden of proof rests on the claimant for the first four steps and on the Commissioner for the fifth step.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

*Standard of Review*

If the Commissioner's decision is supported by substantial evidence, it must be upheld by a reviewing court.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses.  *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is

-8-

entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or if the ALJ based the decision on serious factual mistakes or omissions, *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996). The ALJ has a basic obligation to develop a full and fair record, *Nelson*, 131 F.3d at 1235, and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings, *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). If the evidence on which the ALJ relied does not support the conclusion, the decision cannot be upheld. *Id.*

Ordinarily a credibility finding by an ALJ is binding on a reviewing court, unless that finding is based on errors of fact or logic. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). In making a credibility determination, the ALJ must give specific reasons for the weight given to the claimant's statements so that the claimant and subsequent reviewers will have a fair sense of how the claimant's testimony was assessed. See *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003); *Steele v. Barnhart*, 290 F.3d 936, 941-42 (7th Cir. 2002); Social Security Ruling 96-7p, 61 Fed. Reg. 34,483, 34,486 (July 2, 1996). A remand is required when the ALJ makes credibility findings based on "serious errors in reasoning

rather than merely the demeanor of the witness." *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004).

### *The ALJ's Disability Determination*

Applying the five-step process, the ALJ found that Mr. Jenkins satisfied the first step and had not performed substantial gainful activity since the onset of his impairments in October 2001.  At the second step, the ALJ credited objective medical evidence to support his determination that Mr. Jenkins' degenerative disc disease, hypertension, obesity, mood disorder, agoraphobia in crowds, schizoaffective disorder, posttraumatic stress disorder, paranoid personality traits, and alcohol abuse constituted severe impairments.  At the third step, the ALJ found that these impairments did not meet or equal a listed impairment.  At the fourth step, the ALJ found that Mr. Jenkins could not continue to perform his past relevant work based on his current residual functional capacity.  At the fifth step, the ALJ found that Mr. Jenkins was limited to sedentary or light exertional work that is simple and repetitive and that did not involve more than minimal contact with the public.  The fifth step, the ALJ found that Mr. Jenkins could perform the work of a janitor, housekeeper, production worker, or bookkeeping clerk.  In so doing, despite the restriction to simple and repetitive work without more than minimal contact with the public, the ALJ asserted that Mr. Jenkins' capacity for sedentary and light work was not "significantly compromised" by his non-exertional restrictions and limitations.  *Id.*

The ALJ concluded that Mr. Jenkins was not disabled for purposes of the Social Security Act. The Appeals Council denied Mr. Jenkins' request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. See *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). Mr. Jenkins asks this court to review the denial of his application. The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

*Discussion*

Mr. Jenkins argues that the ALJ did not rely on substantial evidence in finding that he could perform sedentary and light exertional work that is simple and repetitive. Under 20 C.F.R. § 404.1567(a), sedentary work involves lifting no more than ten pounds at once, occasionally lifting files and small tools, occasional walking and standing, and a substantial amount of sitting. Light work involves lifting no more than twenty pounds at once, frequently lifting or carrying objects weighing up to ten pounds, and "a good deal" of walking or standing or alternatively, substantial sitting with some pushing and pulling. 20 C.F.R. § 404.1567(b).

In determining that Mr. Jenkins could perform light and sedentary work, the ALJ stated that he relied on the objective medical evidence in the record. He specifically credited the testimony of Dr. Hutson at the July 14, 2005 hearing. R. 24. Dr. Hutson opined that Mr. Jenkins was not totally disabled, but the ALJ

interrupted Dr. Hutson before he made recommendations about the actual extent of Mr. Jenkins' necessary physical limitations.

The ALJ then discredited Dr. Kathleen Thomas's medical evaluation that Mr. Jenkins could sit, stand, or walk no more than two hours each or in combination during an eight hour workday. This assessment would preclude Mr. Jenkins from performing both light and sedentary work on a full-time basis. According to the ALJ, Dr. Thomas's evaluation was based in part on a temporary knee injury Mr. Jenkins had recently sustained rather than the long-term impairments. R. 25. But, during her consultation, Dr. Thomas diagnosed Mr. Jenkins with probable cervical arthritis and discogenic lower back pain. Her report clearly indicates that only her prohibitions on crawling and climbing were made based on Mr. Jenkins' temporary knee injury, and she clearly focused on the difference between the temporary knee problem and the chronic problems. See R. 272-74. Also, it would have been odd for Dr. Thomas to restrict Mr. Jenkins to two hours of sitting – where the injured knee would be under no pressure – per eight hour work day if she had been relying on Mr. Jenkins' knee injury.

When there is divergent evidence to support opposing outcomes, the ALJ must give reasons that build an accurate and logical bridge between the evidence and the ultimate result. See *Sarchet*, 78 F.3d at 307; *Blakes*, 331 F.3d at 569. An ALJ's reliance on factual errors indicates a failure to build such a bridge. See *Sarchet*, 78 F.3d at 307-09 (reversing and remanding because the ALJ made

serious errors in interpreting testimony, misunderstood the nature of the disability claimed, and made a "number of unfounded speculations"); *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (reversing and remanding because the ALJ did not "sufficiently connect the dots" between the claimant's impairments and the medical evidence in the record). Here, the ALJ's dismissal of Dr. Thomas' opinion based on an erroneous presentation of the facts similarly indicates a failure to build an accurate and logical bridge.

The ALJ also dismissed Dr. Bonilla's determination that Mr. Jenkins suffered severe limitations in sitting and standing as unsupportable because Mr. Jenkins had an active range of motion and no "significant and persistent neurological deficits." R. 25. Dr. Bonilla's consultation report, however, indicated that Mr. Jenkins had been suffering from degenerative disc disease and degenerative joint disease for six years prior to the examination. R. 138. Based on those findings, Dr. Bonilla predicted that Mr. Jenkins would not be able to return to gainful employment even after treatment. R. 139.

Again, the ALJ's interpretation of the medical information presented to him appears factually unsound. An ALJ is prohibited from substituting his own judgment for a physician's unless he points to specific evidence in the record to support his lay opinion. See *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (remanding and explaining "that an ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority

in the record"); *Blakes*, 331 F.3d at 569.  Here, the ALJ cited no evidence to support his determination that Dr. Bonilla's opinion was invalid.  R. 25.  That absence further weakens the ALJ's bridge between the evidence and the denial of benefits.

The ALJ then discredited Mr. Jenkins' subjective complaints of severe back pain, stating that they were not reasonably consistent with the medical evidence. R. 24.  In so finding, the ALJ was careful to note that Mr. Jenkins' complaints were not consistent with the *objective* medical evidence.  The ALJ asserted that although many doctors indicated that Mr. Jenkins suffered from mild disc bulging and degenerative disc disease, he did not have herniation – a protrusion through tissue – or neural foraminal narrowing – a narrowing of the opening through which the spinal nerves pass.  R. 24-25.  Because Mr. Jenkins' condition had not progressed to advanced stages and because Mr. Jenkins still retained a relatively active range of motion, the ALJ found Mr. Jenkins' back problems not totally disabling.  *Id.*

In interpreting medical evidence, the ALJ must be careful to base his interpretations on sound scientific findings rather than personal speculation.  In *Blakes*, the Seventh Circuit reproached the ALJ for "relying on conjecture and her own assessment of the medical evidence."  331 F.3d at 569.  The ALJ assumed that someone with a severe disorder but a good prognosis could not be considered

disabled.   The court could find no evidence in the record to support such a
conclusion, rendering the ALJ's bridge unsupportable.  *Id.* at 569-70.

Here, the ALJ made similar unfounded conclusions about Mr. Jenkins'
physical impairments.  The ALJ found that Mr. Jenkins' degenerative disc disease
was severe, but he discounted the condition because it had not yet become a
herniation or foraminal narrowing.   The doctor who reviewed Mr. Jenkins' MRI
revealing the disc bulges and degeneration – Dr. Bonilla – determined, however,
that Mr. Jenkins had severe limitations on sitting, standing, lifting, and bending
that were expected to last even after treatment and would prevent Mr. Jenkins
from engaging in gainful employment.   Dr. Bonilla did not indicate that Mr.
Jenkins' physical impairments needed to progress to herniation or foraminal
narrowing to warrant a finding of disability.   The ALJ is not permitted to
substitute his own lay judgment for that of a medical expert's.  See *Rohan v.
Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (remanding because "the ALJ simply
indulged his own lay view of depression" for that of the examining doctor).

Only one physical evaluation, by Dr. Bastnagel, supports the ALJ's
determination that Mr. Jenkins could sit and stand for up to six hours per eight
hour workday.  The ALJ did not cite this evaluation anywhere in his opinion.  Nor
does Dr. Hutson's testimony indicate that he had reviewed Dr. Bastnagel's
evaluation before asserting that Mr. Jenkins was not totally physically disabled.

Without analyzing or even referring to such evidence, the ALJ's determination is unsupportable.  See *Clifford*, 227 F.3d at 870.

After determining that Mr. Jenkins was physically capable of performing sedentary and light work, the ALJ asserted that such work was compatible with Mr. Jenkins' non-exertional restrictions and limitations.  R. 29.  While the parties did not emphasize this point, if the ALJ submits a hypothetical question to a vocational expert to determine a claimant's employment capabilities and opportunities, the hypothetical question "must include all limitations supported by medical evidence in the record."  *Young*, 362 F.3d at 1003-04 (reversing and remanding because the hypothetical question submitted "failed to account fully for the findings of almost all of the credited medical experts").

Here, the ALJ's hypothetical question mentioned only that Mr. Jenkins had a ninth grade education, the capacity to perform sedentary and light work, and a need for minimal public contact.  R.127-28.  The ALJ did not include Mr. Jenkins' numerous non-exertional limitations such as extremely poor reading and comprehension abilities, R. 560; mental impairments including anxiety disorder, paranoia, panic attacks, schizoaffective disorder, and posttraumatic stress disorder; and a history of suicidal ideation.   Given the severity of these impairments, it seems unlikely that the vocational expert, with such information, would have found Mr. Jenkins capable of being a bookkeeping clerk, janitor, housekeeper, or production worker.  See 20 C.F.R. § 404, Subpt. P, App. 2, Sec.

201.00(c) (stating that individuals with severe physical impairments may be unemployable in sedentary work because they lack the requisite special skills, relevant experience, or educational qualifications).

In the face of more than a dozen medical reports that indicate severe disabilities and limitations, the ALJ failed to cite even the single report that might have supported his residual functional capacity determination. He also did not effectively demonstrate that the other evaluations were incredible or unreliable. Rather than rebutting the opposing evidence with substantial objective evidence, the ALJ appears to have relied on his own lay opinions and speculations. The ALJ failed to articulate sufficiently his assessment of the evidence to allow this court to follow the path of, and have any confidence in, the ALJ's reasoning. See *Rohan*, 98 F.3d at 971.

When the decision of an ALJ is "unreliable because of serious mistakes or omissions, the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand would be pointless." *Sarchet*, 78 F.3d at 308-09. The errors in this case were not harmless. On this record, a reasonable trier of fact could have come to a different conclusion. This court must reverse the ALJ's decision and remand for further consideration.

*Conclusion*

The decision of the ALJ is reversed and remanded for reconsideration consistent with this entry.   On remand, all steps of the five-step sequential process are subject to reconsideration.   Final judgment shall be entered consistent with this entry.


        So ordered.

Date: August 14, 2007

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana


Copies to:

Charles Julian Myers
cmyers7943@sbcglobal.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov